**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CW 0786

IN RE: SUCCESSION OF THE ESTATE OF ROBERT CHARLES JOHNSON

Judgment rendered: **MAY 2 8 2020**

\* \* \* \* \*

On Appeal from the
Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
No. 15222, Div. "C"

The Honorable Robert H. Morrison, III, Judge Presiding

\* \* \* \* \*

Todd E. Gaudin
Baton Rouge, Louisiana

Attorney for Plaintiff/Appellant
Beverly Garner Edwin


Sherman Q. Mack
C. Glenn Westmoreland
Matthew H. Todd
Albany, Louisiana

Attorneys for Defendants/Appellees
Lorie J. Parker, Robert C. Johnson,
Jr., and Aveis J. Parker

\* \* \* \* \*

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**HOLDRIDGE, J.**

In this intestate succession proceeding, Beverly Garner Edwin appeals the trial court's dismissal of her motion to enforce a conventional usufruct over immovable property in the succession. For the following reasons, we convert the appeal to an application for supervisory writs, deny the writ, and affirm the trial court's judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 7, 1995, Ms. Edwin's former husband, Robert C. Johnson, signed an "Affidavit of Usufruct" in her favor for immovable property located in Walker, Louisiana, that he owned prior to their marriage.[1] The usufruct was "for the remainder of her life even if she remarries" and was recorded on June 14, 1995. Mr. Johnson married Ms. Edwin in 1984, they separated in 2002 or 2003, and they were divorced in 2006. Prior to their separation, they lived together in the house on the property subject to the usufruct. After the separation, only Mr. Johnson continued to live in the house.

Mr. Johnson died intestate on August 13, 2010. Ms. Edwin filed a petition to be named administratrix of Mr. Johnson's succession on June 3, 2014. She was initially appointed administratrix, but on September 18, 2014, the trial court removed her and appointed three of Mr. Johnson's fourteen children, Lorie Parker, Avies Parker, and Robert C. Johnson, Jr., to be co-administrators of the succession.

Thereafter, on September 26, 2018, Ms. Edwin filed a "Motion to Enforce Conventional Usufruct & Spousal Reimbursement Claim."[2] She alleged that the property subject to the usufruct was vacant, its value was depreciating, and it was

---

[1] In her petition, Ms. Edwin alleged that the house and property at issue were part of the community property between Mr. Johnson and his first wife. Mr. Johnson retained the property after the divorce.

[2] Ms. Edwin attached a certified copy of the usufruct to her petition. This conventional usufruct of nonconsumables was established by an *inter vivos* donation in the form of an authentic act. See La. C.C. arts. 537, 544.

in need of repair. Ms. Edwin further stated that she had paid to clean up the property because it was being neglected by the co-administrators. She also requested that the court recognize her claim against Mr. Johnson's estate totaling $21,600.00, representing the amount of funds she alleged she used to maintain and improve the property subject to the usufruct.[3]

In response to Ms. Edwin's claim, the co-administrators filed a peremptory exception raising the objection of prescription, asserting that the usufruct was extinguished by ten years of non-use pursuant to La. C.C. art. 621. Louisiana Civil Code article 621 provides, in pertinent part, "A usufruct terminates by the prescription of nonuse if neither the usufructuary nor any other person acting in his name exercises the right during a period of ten years." Ms. Edwin opposed the motion, contending that the prescription of non-use did not apply to a lifetime usufruct and that she used the property within the ten-year period to interrupt the prescriptive period.

The trial court initially held a hearing to determine whether La. C.C. art. 621 applied to a lifetime usufruct. Following argument, the trial court issued an order wherein it found that La. C.C. art. 621 does apply to a lifetime usufruct. The trial court then held an evidentiary hearing and issued reasons for judgment on February 15, 2019, finding that the usufruct was extinguished through nonuse. On the same date, the trial court signed a judgment which sustained the exception of prescription and dismissed Ms. Edwin's usufruct claim. From this judgment, Ms. Edwin appeals.

**APPELLATE JURISDICTION**

Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. **Texas Gas Exploration**

---

[3] According to Ms. Edwin's petition, the house on the property caught fire in the early 1980s. Thereafter, she and Mr. Johnson rebuilt the house on the same lot allegedly using her income to purchase supplies to construct the new house.

**Corp. v. Lafourche Realty Co., Inc.**, 2011-0520 (La. App. 1 Cir. 11/9/11), 79 So.3d 1054, 1059, writ denied, 2012-0360 (La. 4/9/12), 85 So.3d 698. Subject to certain exceptions, appeals from orders or judgments rendered in succession proceedings are governed by the same rules applicable to appeals in ordinary proceedings. See La. C.C.P. art. 2974. The Code of Civil Procedure grants the right to an immediate appeal of certain judgments rendered in succession proceedings; however, the present judgment is not among those identified by the Code. See La. C.C.P. art. 3308 (judgment homologating tableau of distribution may be suspensively appealed); La. C.C.P. art. 3337 (judgment homologating final account is a "final judgment"); La. C.C.P. arts. 2122 and 2974 (governing appeals of orders appointing or removing a succession representative).

This court's appellate jurisdiction extends to "final judgments." La. C.C.P. art. 2083. A final judgment is one that determines the merits of a controversy, in whole or in part. In contrast, an interlocutory judgment does not determine the merits, but only preliminary matters in the course of an action. La. C.C.P. art. 1841. The judgment on appeal determines only one issue in the succession, namely, the enforceability of the usufruct over Mr. Johnson's immovable property. The resolution of that issue, however, does not conclude the succession. The heirs have not been placed in possession of their respective portions of the estates, nor has a judgment been rendered homologating final accounts by the current co-administrators. See La. C.C.P. art. 3337. In addition, Ms. Edwin's spousal reimbursement claim has not been adjudicated. Therefore, the judgment at issue is a partial judgment.

Whether a partial final judgment is immediately appealable during ongoing litigation is determined by examining the requirements of La. C.C.P. art. 1915. See **Succession of Jaga**, 2016-1291 (La. App. 1 Cir. 9/15/17), 227 So.3d 325, 328; **Successions of Wayne**, 2018-1177 (La. App. 1 Cir. 5/31/19), 2019 WL 2332357,

4

at *2 (unpublished); see also **In re Succession of Faget**, 2006-2159 (La. App. 1 Cir. 9/19/07), 984 So.2d 7, 10. The instant judgment does not fall within any of the categories of partial judgments subject to immediate appeal under Article 1915(A).[4] Therefore, the appeal of the judgment is governed by Subsection B of that article, which provides that "[w]hen a court renders a partial judgment ..., as to one or more but less than all of the claims, demands, issues, or theories" presented in an action, that judgment shall not constitute a final judgment, and thus shall not be immediately appealable, unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay. La. C.C.P. art. 1915(B). The trial court did not designate the judgment as final for purposes of immediate appeal or make a determination that there was no just reason for delay.[5] Therefore, the judgment is not a final judgment for purposes of immediate appeal.[6]

---

[4] We reject Ms. Edwin's contention the judgment is final under La. C.C.P. arts. 1915(A)(1) and (4) because she is a third-party plaintiff in the succession of her former husband's estate and the trial court dismissed her third-party demand, which was tried separately from the principle demand, with prejudice. Although the trial court dismissed her usufruct claim, the judgment did not address the reimbursement claim. Therefore, the judgment is not a partial final judgment under La. C.C.P. art. 1915(A)(1) because it does not resolve the entirety of Ms. Edwin's claims. The judgment is also not a partial final judgment pursuant to La. C.C.P. art. 1915(A)(4) because the entirety of the "incidental demand" was not tried separately from the main demand as envisioned by La. C.C.P. art. 1038.

[5] After the record was lodged with this court, this court issued a rule to show cause, noting that it appeared that the judgment at issue was a partial judgment, which had not been certified as final by the trial court pursuant to La. C.C.P. art. 1915(B). This court invited the trial court to designate the judgment under La. C.C.P. art. 1915(B) if it chose to do so, or to advise this court that no certification was necessary by July 15, 2019. The trial court did not certify the judgment or advise this court as to the need for certification.

[6] Although a trial court may grant a partial judgment as to less than all the claims, demands, issues, or theories against a party and designate such judgment as a final judgment after an express determination that there is no just reasons for delay, as authorized by La. C.C.P. art. 1915, the judgment must still comply with the requirement that it contain decretal language. **Hill v. TMR Exploration, Inc.**, 2018-1074 (La. App. 1 Cir. 2/25/19), 2019 WL 938857, at *2 n.2 (unpublished); **Boyd Louisiana Racing, Inc. v. Bridges**, 2015-0393 (La. App. 1 Cir. 12/23/15) 2015 WL 9435285, at *2-3 (unpublished); see also **Gaten v. Tangipahoa Parish School System**, 2011-1133 (La. App. 1 Cir. 3/23/12), 91 So.3d 1073, 1074. We note that the instant judgment does not state in whose favor the ruling is ordered; however, this is a succession matter and the exception was urged by the co-administrators of the succession to defeat a claim against the succession.

See La. C.C.P. art. 1915(B)(2). Consequently, this court lacks appellate jurisdiction to consider the present appeal. See La. C.C.P. arts. 1841, 1911, 2083.

Nevertheless, La. Const. art. V, § 10(A) provides that a court of appeal has "supervisory jurisdiction over cases which arise within its circuit." Because Ms. Edwin filed the motion for appeal within the thirty-day delay provided for seeking supervisory writs, we exercise our discretion to convert her appeal to an application for supervisory writ, and consider the merits of his appeal under our supervisory jurisdiction. See La. Uniform Rules - Court of Appeal, Rule 4-3; **KAS Properties, LLC v. Louisiana Board of Supervisors for Louisiana State University**, 2014-0566 (La. App. 1 Cir. 4/21/15), 167 So.3d 1007, 1010. See also **Stelluto v. Stelluto**, 2005-0074 (La. 6/29/05), 914 So.2d 34, 39 (noting that the decision to convert an appeal to an application for supervisory writ is within the discretion of the appellate courts); **Successions of Wayne**, 2019 WL 2332357, at *2 (this court exercised supervisory jurisdiction to review an uncertified judgment that did not resolve the successions, but only concerned three assets in the proceedings).

## DISCUSSION

On appeal, Ms. Edwin challenges the trial court's conclusion that her claim is prescribed. Ordinarily, the party urging prescription bears the burden of proving such at the trial of the exception; however, if the petition is prescribed on its face, the burden shifts to the plaintiff to show his action is not prescribed. **Quinn v. Louisiana Citizens Property Insurance Corp.**, 2012-0152 (La. 11/2/12), 118 So.3d 1011, 1017. When the plaintiff is contending there is a suspension of prescription, he then has the burden of proving the suspension. **Shannon v. Vannoy**, 2017-1722 (La. App. 1 Cir. 6/1/18), 251 So.3d 442, 448. In this case, Ms. Edwin's claim is not prescribed on its face; therefore, the co-administrators

6

had the burden of proving that Ms. Edwin did not use the usufruct for a ten-year period.

Appellate review applicable to a prescription exception depends on the manner in which the exception is heard. **Shannon**, 251 So.3d at 448. Evidence may be introduced to support or controvert the exception of prescription when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, the exception must be decided on the facts alleged in the petition, which are accepted as true. **Shannon**, 251 So.3d at 448-49. Since evidence was introduced in this case, the trial court made factual findings and determinations. A court of appeal may not set aside a trial court's factual finding unless it is manifestly erroneous or clearly wrong. A trial court's factual finding is manifestly erroneous/clearly wrong when, after review of the entire record, the appellate court finds both that no reasonable factual basis exists for the finding and that it is manifestly erroneous or clearly wrong. See **Stobart v. State through Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993). This court's determination is not whether the trier of fact was correct, but whether the factfinder's conclusion was reasonable. **Id**. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. **Id**.

On appeal, Ms. Edwin initially contends that the trial court erred in determining that a conventional lifetime usufruct is subject to prescription for nonuse pursuant to La. C.C. art. 621. Ms. Edwin argues that a usufruct established for a term or under a condition as authorized under La. C.C. art. 545[7] terminates

---

[7] Louisiana Civil Code article 545 states:

Usufruct may be established for a term or under a condition, and subject to any modification consistent with the nature of the usufruct.

only when that specific term expires or the condition occurs under La. C.C. art. 610,[8] which would be at her death. Ms. Erwin asserts that La. C.C. art. 621 applies only to usufructs created without a term or condition or where nonuse is the express condition. Ms. Edwin does not cite any authority in support of her contention. In rejecting Ms. Edwin's contention, the trial court found that La. C.C. art. 545 did not purport to impose a different rule on a lifetime usufruct for nonuse, but merely set forth that a usufruct could be for life and could be subject to modification. We agree with the trial court and also note that La. C.C. art. 621, which provides that a usufruct "terminates by the prescription of nonuse if neither the usufructuary nor any other person acting in his name exercises the right during a period of ten years," does not impose a different rule upon a usufruct created for a term or condition.[9] Therefore, we find no error in the trial court's conclusion that a lifetime usufruct may be legally extinguished by the prescription of non-use for a period of ten years or more.

Ms. Edwin next contends on appeal that the trial court erred in determining that she had not used the usufruct during a ten-year period. As the usufructuary, Ms. Edwin had "the right to possess [the property] and to derive the utility, profits, and advantages that [the property] may produce, under the obligation of preserving [the property's] substance. La. C.C. art. 539.[10] Regarding "[p]ossession and use of the things," La. C.C. art. 557 provides that "[t]he usufructuary takes the things in

---

The rights and obligations of the usufructuary and of the naked owner may be modified by agreement unless modification is prohibited by law or by the grantor in the act establishing the usufruct.

[8] Louisiana Civil Code article 610 states, "A usufruct established for a term or subject to a condition terminates upon the expiration of the term or the happening of the condition."

[9] See also La. C.C. art. 3448, which states, "Prescription of nonuse is a mode of extinction of a real right of ownership as a result of failure to exercise the right for a period of time."

[10] Louisiana Civil Code article 539 also provides that the usufructuary is bound to use the things subject to the usufruct as a prudent administrator and to deliver them to the naked owner at termination of the usufruct.

the state in which they are at the commencement of the usufruct."[11] A usufructuary may institute all actions against the naked owner or third persons that are necessary to insure the possession, enjoyment, and preservation of his or her rights. La. C.C. art. 566. In its reasons for judgment, the trial court reviewed the testimony and evidence and determined that Ms. Edwin did not use the property for a ten-year period.

At the hearing on the prescription exception, the co-administrators and children of Mr. Johnson testified that Ms. Edwin did not live on the property after she separated from Mr. Johnson. Ms. Lorie Parker, one of the co-administrators and Mr. Johnson's daughter, also testified that she lived on the property, maintained it, paid the taxes, and kept a travel camper on it. In opposition to the exception, Ms. Edwin testified that she lived in the house on the property until she separated from Mr. Johnson in 2003, whereupon she moved out; they divorced in 2006. Ms. Edwin testified that after 2003, she visited the property weekly or biweekly until 2006 to store and retrieve school supplies she used in her teaching job. According to Ms. Edwin, she attended a birthday party in 2006 on the property, and visited Mr. Johnson in 2008 and 2009. In 2007, she told her son he could live in the house with his father, but she did not charge him rent. She added that in 2007 and 2008, she cleaned, "kept the place up," and mowed the yard with her son and his girlfriend and her daughter.

After Mr. Johnson died and Ms. Edwin attended a family meeting regarding his estate, Ms. Edwin testified that she told the children she wanted her and Mr. Johnson's daughter to live on the property, but her daughter did not do so. Ms. Edwin testified that Ms. Lorie Parker had moved her cars and trailers onto the

---

[11] The right of the usufructuary to take possession of the things may be predicated upon the discharge of the obligation to make an inventory and give security. La. C.C. art. 557, Revision Comments—1976, Comment (d), citing La. C.C. arts. 570, 575.

property. On August 27, 2013, a prior attorney for Ms. Edwin sent Ms. Lorie Parker (then Mrs. Vaughn) a letter informing her of the usufruct and stating that Ms. Edwin had the right to lease the property to her daughter if she wished to do so. In 2017, in response to a letter she received from the City of Walker stating that the condition of the property violated city ordinances, Ms. Edwin hired someone to clean up the property.[12]

In its reasons for judgment, the trial court determined that for a ten-year period after Ms. Edwin stopped using the property to store her school supplies in 2006, Ms. Edwin's activities on the property did not constitute a use of the property. The trial court also determined that Ms. Edwin's "allowing" her son to live in the house along with Mr. Johnson did not amount to a use sufficient to interrupt prescription. The trial court considered **Theriot v. Terrebonne**, 195 So.2d 740, 743 (La. App. 1 Cir. 1967), which Ms. Edwin contended supported her argument that her son's activities constituted a use of the property by her. In **Theriot**, the issue was whether use of the property by a naked owner was for himself or whether the use was for the usufructuary based upon the principle that the usufructuary has the exclusive right to use the property. **Id.** at 742. The testimony established that the mother, the usufructuary, had asked her son, the proposed naked owner, to care for and look after the property. **Id.** The son cut the grass, operated and docked boats at the wharf on the batture, and placed a pile of oyster shells on the batture. **Id.** This court found that the son had the mother's implied permission to use the property, and that any use made of the property by the son was not for himself as the proposed naked owner, but was for the use and benefit of his mother, the usufructuary. **Id.** at 743. Therefore, his mother's

---

[12] At the conclusion of Ms. Edwin's testimony, her counsel and opposing counsel stipulated that four unidentified witnesses would testify to the same information that Ms. Edwin had.

usufruct was not forfeited for nonuse of ten years. **Id.**[13] In the case at bar, Ms. Edwin's son lived on the property with Mr. Johnson, his father. Moreover, the testimony established that he did not pay rent and it was unclear whether he helped with the upkeep of the property, unlike the **Theriot** case where the son was caring and looking after the property. See **Id.** at 742-43. The trial court commented that while a usufructuary may exercise his or her rights of usufruct through a third person, such exercise would seem to require some benefit to the usufructuary. We cannot find that the trial court erred in holding that Ms. Edwin's son's living at his father's house did not constitute a use of the usufruct on Ms. Edwin's behalf. Therefore, we cannot hold that the trial court was manifestly wrong in finding that Ms. Edwin's usufruct was extinguished due to nonuse pursuant to La. C.C. art. 621. Ms. Edwin's assignments of error have no merit.

### DECREE

For these reasons, we convert the appeal to an application for a supervisory writ and deny the writ. Therefore, we affirm the trial court's judgment of February 15, 2019, that sustained the exception of prescription and dismissed the usufruct claim asserted by Beverly Garner Edwin. Appeal costs are assessed against Beverly Garner Edwin.

**APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT DENIED; JUDGMENT AFFIRMED.**

---

[13] In **Theriot**, the usufructuary's son was the proposed naked owner of the batture tract because the description of property previously conveyed to him erroneously included the batture tract. The naked owner was actually a third person, and the lawsuit was brought by the mother as usufructuary to compel the naked owner to remove a home he placed on the batture. The naked owner contended that the usufruct had been forfeited by nonuse for ten years or more.